(35 Misc. Rep. 645.)

### MADDEN v. VAN WYCK et al.

(Supreme Court, Special Term, New York County. August, 1901.)

MUNICIPAL CORPORATIONS—CONTRACTS—ACTION TO ENJOIN.

A complaint in action by a taxpayer alleged that the city commissioner of street cleaning had advertised for bids for removing garbage, which required the successful bidder to build and operate a garbage plant within 30 days, though such commissioner knew that there was only one company that had a plant such as was specified in the advertisement, and that none could be built within 30 days; that he had awarded the contract to such company, though there were two other lower bidders; that the price agreed to be paid was extravagant, to the knowledge of the city commissioners and the board of estimate. The complaint contained no allegations of fraud. *Held*, that it was insufficient.

Action by James Francis Madden against Robert A. Van Wyck and others. Motion for injunction pendente lite. Motion denied.

John W. Brainsby, for the motion.

John Whalen, Corp. Counsel, George L. Sterling, and De Lancey Nicoll, opposed.

GILDERSLEEVE, J. This is a suit in equity for an injunction restraining the board of estimate and apportionment and the commissioner of street cleaning of the city of New York from making or authorizing a contract with the New York Sanitary & Utilization Company for removing and disposing of garbage from the city.

The questions presented arise on the plaintiff's motion to continue a preliminary injunction during the pendency of the suit. The substance of the plaintiff's complaint is that the commissioner's advertisement for bids for removing garbage required that the contractor for the work should build and put in operation a suitable plant, and begin the work within 30 days after the contract should be executed, although the commissioner and the board of estimate then knew that the only party possessed of such a plant was the New York Sanitary & Utilization Company, and that it was impossible to erect such a plant within a month; that the commissioner also knew, when he called for bids, that the conditions prescribed for the contract were such as would prevent competitive bidding within reasonable limits, and that the Sanitary & Utilization Company only could comply with them; that the contractor was also required to deposit $40,000 as security for the performance of the contract; that, although two other parties bid for the work sums which were much less than the amount bid by the Sanitary & Utilization Company, the contract was awarded to that company; that the board also knew, when it awarded the contract, that the price allowed was "extravagant" and "calculated to injure the rights" of other bidders.

The complaint is fatally defective. It states no ground for relief, either for the illegality of the contract or for fraud on the part of the board and commissioner in entering into it. There is not a word on the subject of fraud in the entire complaint, nor is there any proof of fraud by affidavit. The plaintiff can hardly expect the court to infer fraud from the allegation that the board and commissioner knew, in effect, that the conditions prescribed for the contract would throw it into the hands of the Sanitary & Utilization Company. There is no evidence, available for the purpose of this motion before me, that they knew anything of the sort. That they had formed any design to accomplish such a purpose is not charged, and cannot be inferred. There is no presumption of law, nor any antecedent probability, that municipal officers habitually proceed contrary to law or act from corrupt motives, which dispenses with the necessity of pleading facts appropriate to such a cause of action as the plaintiff here claims to have. If it be assumed, however, that the knowledge attributed to them existed in the minds of the commissioner and of the persons who compose the board of estimate and apportionment, and that it is evidence of fraudulent intent on their part, in connection with the letting of the contract, it would lead logically to the conclusion that, possessed of this knowledge, they should either not have advertised for bids at all, or should not have prescribed the conditions which they annexed to the contract. This would be a gross absurdity; for, whatever those officers may have known on the subjects in question, their duty was to have the work done, and the conditions which the plaintiff complains of were reasonable and just. The charge that the board knew that the price allowed for the work was "extravagant" is not supported by any proof, and on this motion can be allowed no weight whatever. Besides, the plaintiff does not charge that, in point of fact, the price was excessive. He contents himself with the mere averment that the

board knew it to be "extravagant," which is not equivalent to an allegation of the fact. And this criticism applies to the charges that the board and commissioner knew that the Sanitary & Utilization Company only had the requisite plant for the work, that it was impossible to erect such a plant in one month, and that the conditions of the contract were of such a character as to prevent competition in the bidding. The plaintiff has not averred these facts. He merely states that the board and commissioner knew them. Nor has he attempted to prove them by the parties who alone knew them, if they really exist. The question here is, not what the defendants knew or did not know, but what the plaintiff claims to be the facts on which he rests his case. In point of fact, the defendants show that, in respect to the charges that no one but the Sanitary & Utilization Company had the necessary plant and that such a plant could not be built in a month, those charges were not true. Again, the complaint avers generally that conditions were prescribed for the contract, but does not state specifically what they were, nor that the two other bidders, Messrs. McGill & Co. and James F. Barrett, were able and willing to comply with them. If they were not willing to accept and fulfill those conditions, they were not in a position to raise any question respecting the requirement concerning the plant, and were, therefore, not competent bidders. If so, their bids were not entitled to be considered by the board or commissioner; nor can they be now regarded by the court in determining, by comparison, whether the price allowed to the Sanitary & Utilization Company was excessive or not.

But, aside from these defects in the complaint, and viewing the case on the merits, I think that the board and the commissioner have conducted themselves in a strictly lawful and judicious manner. They have followed the provisions of the charter of Greater New York, and have wisely used the discretion which that charter intrusts to them, and which, from the necessity of the case, is essential to a responsible and effective discharge of their functions. The courts of this state have uniformly allowed municipal bodies the largest latitude of discretion where they could do so consistently with established principles of statutory construction. Greater New York Charter (Laws 1897, c. 378) § 544; In re Dugro, 50 N. Y. 513; Kingsley v. City of Brooklyn, 78 N. Y. 200, 215; Baird v. Mayor, etc., 96 N. Y. 567, 593; Talcott v. City of Buffalo, 125 N. Y. 280, 288, 26 N. E. 263, 265. This case exemplifies the facility with which the leisured taxpayer in modern times lends himself to the designs of jealous and disappointed contractors, who, for the sake of reprisal upon the municipality, bring desperate suits for injunctions with no expectation of success, thereby vexing the city officials and impeding the prosecution of public works, to the detriment of the health, comfort, and convenience of the community. This is a practice which cannot be too severely reprehended. Motion denied, with $10 costs.

Motion denied, with $10 costs.